UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES L. WOOLWINE,<br><br>    Plaintiff,<br><br> v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>    Defendant. | CASE NO. C05-5433RBL<br><br>REPORT AND RECOMMENDATION<br><br>Noted for April 21, 2006 |

  Plaintiff, James L. Woolwine, has brought this matter for judicial review of the denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is sixty-four years old.[1] Tr. 25. He has a high school education, two years of college course work, and past work experience as a project manager and materials/field coordinator, including cost estimator. Tr. 17, 69, 74, 175.

On November 16, 2002, plaintiff filed an application for disability insurance benefits, alleging disability as of March 2, 2002, due to arthritis and gout. Tr. 17, 58. His application was denied initially and on reconsideration. Tr. 25-27, 35. A hearing was held before an administrative law judge ("ALJ") on June 22, 2004. Tr. 148. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 148-80.

On September 23, 2004, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of osteoarthritis and allied disorders;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform the full range of light work, which precluded him from performing his past relevant work; and

(5) at step five, a finding of "not disabled" was directed by 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.07.

Tr. 18, 22-23. Plaintiff's request for review was denied by the Appeals Council on May 3, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

On June 27, 2005, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1 and #7). Specifically, plaintiff argues that decision should be reversed and remanded to the Commissioner for further administrative proceedings, because the ALJ failed to properly inquire as to whether plaintiff's skills were transferable to other work at step five of the disability evaluation process. The undersigned agrees the ALJ erred in this regard, and thus in determining plaintiff to be not disabled, and

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

therefore recommends this matter be remanded for further administrative proceedings.

DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Failed to Properly Inquire Regarding the Transferability of Plaintiff's Skills

If the claimant cannot perform his or her past relevant work at step four of the disability evaluation process, at step five, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d)-(e). In doing so, the ALJ considers the claimant's residual functional capacity, age, education, and work experience, to see if the claimant "can make an adjustment to other work." 20 C.F.R. 404.1520(a)(4)(v), (g)(1). If the claimant can make an adjustment to other work, he or she will be found not disabled. Id. If not, the claimant will be found disabled. Id.

In making the determination as to whether a claimant is capable of performing other work existing in significant numbers in the national economy, the ALJ must take into account the claimant's skills, if any, and their transferability. Social Security Ruling ("SSR") 82-41, 1982 WL 31389 *1. A claimant's "[s]kills and their transferability relate to" his or her "abilities to do occupations different from those" he or she did "before becoming impaired." Id. at *1. The term "skills" refers to "experience and demonstrated proficiency with work activities in particular tasks or jobs." Id. at *3.

In general, "the greater the degree of acquired work skills, the less difficulty" the claimant "will experience in transferring skills to other jobs," except if "the skills are such that they are not readily usable in other industries." Id. at *5. This is because claimants "with highly skilled backgrounds" have:

> [A] much greater potential for transferability of their skills because potential jobs in which they can use their skills encompass occupations at the same and lower skill levels, through semiskilled occupations. Usually the higher the skill level, the more the potential for transferring skills increases.

Id. at *4. Similarly, "where job skills have universal applicability across industry lines, . . . transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within" the claimant's residual functional capacity. Id. at *6. On the other hand, "where job skills are unique to a specific work process in a particular industry or work setting," such "skills will not be found to be transferable without the need for more than a minimal vocational adjustment by way of tools, work processes, work settings, or the industry." Id.

Additional considerations must be taken into account in determining the transferability of skills, when the claimant is "closely approaching retirement age" (age 60 to 64). 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.00(f). For such claimants who have one or more severe impairments that limit them to "no more than light work," again, a finding of transferability "to skilled or semiskilled light work" will be made, "only if the light work is so similar" to the claimants' previous work that they "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4). This is because claimants with this "adverse vocational" profile:

> [C]annot be expected to make a vocational adjustment to substantial changes in work simply because skilled or semiskilled jobs can be identified which have some degree of skill similarity with their PRW [past relevant work]. In order to establish transferability of skills for such individuals, the semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation.

SSR 82-41, 1982 WL 31389 *5. To assure "the correct legal standard" is applied, the ALJ "must make a specific finding as to the amount of vocational adjustment required." Coletta v. Massanari, 163 F.Supp.2d 1101, 1105 (N.D. Cal 2001) (citing Renner v. Heckler, 786 F.2d 1421, 1424 (9th Cir. 1986)).

In his decision, the ALJ found plaintiff to have the residual functional capacity to perform the full range of light work. Tr. 22. Because plaintiff was 63 years old at the time of the decision, the ALJ found him to be an individual "closely approaching retirement age." Tr. 21. Based on the vocational expert's testimony, the ALJ found plaintiff had "transferable skills from skilled work previously performed," which included "coordinating, hiring, purchasing materials and doing cost estimates." Id. Further, based on this

REPORT AND RECOMMENDATION
Page - 4

1  vocational profile and the vocational expert's testimony, the ALJ determined 20 C.F.R. Part 404, Subpart P,
2  Appendix 2, § 202.07 directed a finding of "not disabled." Id.

3  Plaintiff argues the ALJ erred in finding him not disabled because the ALJ never inquired as to
4  whether he would encounter little, if any, vocational adjustment in terms of tools, work processes, work
5  settings, or the industry. The undersigned agrees. Nothing in the record indicates that the ALJ inquired
6  specifically as to how much vocational adjustment plaintiff would need to be able to perform the jobs the
7  vocational expert identified. For example, while the ALJ did inquire as to whether plaintiff had skills that
8  would be transferable to other work, he did not ask the vocational expert regarding vocational adjustment.
9  See Tr. 174-79. Further, nowhere in his decision does the ALJ make a determination concerning, or even
10  mention, the level and extent of vocational adjustment plaintiff would need to make.

11  Defendant argues the jobs identified by the vocational expert would require very little vocational
12  adjustment, because they were "subsets" or "part" of the job he performed previously in the same industry.
13  Defendant's Brief, pp. 7-8. Defendant further argues that the vocational expert testified that an individual
14  with plaintiff's limitations, abilities and skills would be able to perform and transfer to the jobs identified,
15  and, therefore, the ALJ was not required to "inquire further" to determine vocational adjustment. Id. at p. 8.
16  In addition, the only vocational adjustment defendant asserts plaintiff would be required to make, would be
17  to "stop performing some of the tasks he had previously performed." Id. Finally, defendant argues the ALJ
18  was not required to specifically use the words "vocational adjustment" in his decision. Id.

19  First, it is true, as defendant asserts, that the ALJ need not recite "magic words" in his decision, as
20  "it serves no purpose to require every step of each decisional process to be enunciated with precise words
21  and phrases drawn from relevant disability regulations." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir.
22  1989); Renner, 786 F.2d at 1224. The Ninth Circuit Court of Appeals, however, also clearly has stated that
23  the ALJ must "make a finding of 'very little vocational adjustment' or otherwise acknowledge that a more
24  stringent test is being applied which takes into consideration" the claimant's age. Renner, 786 F.2d at 1424
25  (emphasis added). As explained below, this the ALJ did not do.

26  It is not clear from the hearing transcript that the vocational expert in fact testified that the jobs she
27  identified plaintiff could do encompassed exactly the same skills as those used by him in his prior work. See
28  Tr. 177-78. Certainly it may be reasonable to infer from such testimony that the vocational expert felt he

REPORT AND RECOMMENDATION
Page - 5

1  could adjust to other jobs at the light exertional level that were essentially "subsets" or "part" of his past
2  relevant work. See Tr. 177-78. See Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989) (court itself
3  may draw specific and legitimate inferences from ALJ's opinion).  Even if it is the case that the vocational
4  expert so testified, the record does not show that, in determining plaintiff to be capable of doing these jobs,
5  the ALJ actually made a finding of "very little vocational adjustment" or "otherwise acknowledged that a
6  more stringent test" was being applied given plaintiff's age.

7  Defendant argues that Renner should be distinguished from this case, because the record was silent
8  in Renner as to the amount of vocational adjustment the claimant required, and because testimony from the
9  vocational expert in that case failed to demonstrate the claimant could perform the jobs identified with very
10 little, if any, vocational adjustment. Renner, 786 F.2d at 1424.  As with the ALJ, however, while it may be
11 reasonable to infer the vocational expert found plaintiff had skills transferrable to jobs which his previous
12 work encompassed, "it is not clear from the record" that the vocational expert "understood the applicable
13 standards" regarding claimants who are approaching retirement age. Coletta, 163 F.Supp.2d at 1106 (citing
14 Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990)).

15 In addition, it may be that the courts in both Renner and Coletta had more deficient records to work
16 with in terms of evidence of transferability of skills and vocational adjustment than the one before the court
17 in this case.  The fact remains, however, that "the Ninth Circuit requires the ALJ, not the vocational expert,
18 to make a specific finding on vocational adjustment, which must be supported by the record." Coletta, 163
19 F.Supp.2d at 1106 (emphasis added).  The real issue in cases such as this, furthermore, "is not whether the
20 vocational expert possessed an adequate understanding of applicable standards, but whether the ALJ did."
21 Id. at 1106 n.10.  It simply is not clear from either the hearing transcript or the administrative decision that
22 the ALJ possessed such an understanding in this case.

23 The undersigned also disagrees with defendant that the ALJ's error here was harmless. See Batson
24 v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying
25 harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ committed
26 harmless error).  Without adequate assurance that the ALJ applied the proper legal standard at step five of
27 the disability evaluation process, the court cannot be certain that the ALJ's determination of non-disability is
28 supported by the record.  As in Coletta, here:

> The ALJ did not make a specific finding that very little vocational adjustment was required to transfer [the claimant's] skills . . . Nor is there evidence that the ALJ acknowledged that a more stringent test was being applied given [the] claimant's advanced age. In fact, the term "vocational adjustment" does not appear anywhere on the record. Therefore, the ALJ committed a legal error . . . and subsequently improperly [found the claimant not disabled].

Coletta, 163 F.Supp.2d at 1106. Thus, also as in Coletta, this matter should be reversed and remanded to the Commissioner "to make a specific finding with regard to the issue" of whether the jobs identified by the vocational expert would require "very little, if any, vocational adjustment." Id.

II.  This Matter Should Be Remanded for Further Administrative Proceedings

The court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because, as discussed above, issues still remain with respect to wether plaintiff could perform other jobs existing in significant numbers in the national economy at step five of the disability evaluation process, this matter should be remanded to the Commissioner for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written

1  objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those
2  objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit
3  imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 21, 2006**,
4  as noted in the caption.

DATED this 29th day of March, 2006.

Karen L. Strombom
United States Magistrate Judge